# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. Joseph A. Dickson |
| v. | : Mag. No. 19-6672 |
| SHAHID AKHTAR, TASSADIQ HUSSAIN, a/k/a "TABASUM MALIK," ASIF ALI, and MOHAMMAD MUSHTAQ | : CRIMINAL COMPLAINT |

I, Brendan E. Nally, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Postal Inspector with the United States Postal Inspection Service, and that this complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

_____
Brendan E. Nally, Postal Inspector
U.S. Postal Inspection Service

Sworn to before me, and
Subscribed in my presence

May 29, 2019 at
Newark, New Jersey

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE

_____
Signature of Judicial Officer

## **ATTACHMENT A**

From at least as early as in or about September 2017 through in or about May 2019, in the District of New Jersey, and elsewhere, defendants

**SHAHID AKHTAR,
TASSADIQ HUSSAIN, a/k/a "TABASUM MALIK,"
ASIF ALI, and
MOHAMMAD MUSHTAQ**

did knowingly and intentionally conspire and agree with each other and others to execute a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, and to obtain money, funds, assets and other property owned by, and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations and promises, contrary to Title 18, United States Code, Section 1344.

In violation of Title 18, United States Code, Section 1349.

## ATTACHMENT B

I, Brendan E. Nally, am a Postal Inspector with the United States Postal Inspection Service ("USPIS"). I am familiar with the facts set forth in this Complaint based on my own investigation, conversations with other law enforcement officers, and my review of reports, documents, and other evidence. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact that I know concerning this investigation. Unless specifically indicated, all conversations and statements described herein are related in substance and in part.

### Overview of the Conspiracy

1. At all times relevant to this Complaint:

    a. Defendants SHAHID AKHTAR, TASSADIQ HUSSAIN, a/k/a "Tabasum Malik," ASIF ALI, and MOHAMMAD MUSHTAQ, along with other known and unknown uncharged co-conspirators (collectively, the "Co-Conspirators"), engaged in a fraudulent scheme to use stolen and fraudulently altered identities to obtain credit cards from financial institutions and then use those credit cards to make purchases that they had no intention to repay, leaving the financial institutions to bear the losses of the scheme.

    b. Specifically, the Co-Conspirators used the personally identifying information of actual people, including dates of birth, drivers license numbers, and social security numbers, to create "synthetic identities," sometimes by pairing the name and social security number of actual person with a fictitious birth date, and sometimes by pairing the person's social security number with a fictitious name and birth date. When creating the synthetic identities, the Co-Conspirators often used the name and social security number of a minor and altered the birth date to make the identity appear to be that of an adult.

    c. The Co-Conspirators then used the stolen and synthetic identities to obtain lines of credit, primarily through opening credit card accounts at financial institutions (the "Fraud Cards"). The Fraud Cards were maintained in good standing with the financial institutions long enough to establish the creditworthiness of the stolen and synthetic identities. The Co-Conspirators then "busted out" the Fraud Cards by making large purchases and never repaying the debts associated with those purchases.

d.  The Co-Conspirators also incorporated and registered in various states numerous purported companies that did little or no legitimate business (the "Sham Companies"). The Sham Companies typically reported mailing addresses that were not brick-and-mortar business locations but were in fact "virtual mailboxes" offered by a company ("Company A") that provides mail receiving and forwarding services, as well as virtual office space, for a fee. The Co-Conspirators used these Sham Companies to make hundreds of thousands of dollars' worth of charges to the Fraud Cards, which were then deposited in bank accounts that the Co-Conspirators opened in the Sham Companies' names. The Co-Conspirators then withdrew these funds in cash.

e.  The Co-Conspirators routinely used "Drop Addresses" in New Jersey, New York, and elsewhere as the purported mailing addresses for the Fraud Cards and the Sham Companies. These Drop Addresses were typically not residential locations, but rather mailboxes offered for lease for the receipt of mail by a commercial package delivery company ("Company B"). In most cases, the Co-Conspirators rented these mailboxes using fraudulent identification documents created using stolen and altered identities. The Drop Addresses were then maintained by the Co-Conspirators for the purpose of receiving mail sent in connection with the Fraud Cards and the Sham Companies.

f.  The following were "financial institutions," as that term is defined in Title 18, United States Code, Section 20: "Bank 1," a financial institution headquartered in Boston, Massachusetts; "Bank 2," a financial institution headquartered in McLean, Virginia; "Bank 3," a financial institution headquartered in Cherry Hill, New Jersey; "Bank 4," a financial institution headquartered in Salt Lake City, Utah; and "Bank 5," a financial institution headquartered in Charlotte, North Carolina.

## Sham Companies

2.  It was a part of the conspiracy that the following Sham Companies, among others, were established, maintained, and used by the Co-Conspirators in furtherance of their fraudulent scheme:

> a.  **"Route 22 Service Corp.":** Records provided by Company A show that an individual with the initials G.A. opened a "Mailbox Plus" account for Route 22 Service Corp. with Company A on or about October 4, 2017. According to Company A's website, a "Mailbox Plus" account includes a "professional address" and "mail and package receipt" but

4

does not include physical office space, absent additional payment. Records provided by Bank 1 further show that G.A. opened a bank account for Route 22 Service Corp. on or about October 7, 2017. Records provided by the U.S. Department of Homeland Security show that G.A. departed the United States on a flight bound for Qatar on or about October 9, 2017, and has not returned as of this date.

    b.    **"EZ Building Supply":** Records provided by Company A show that an individual with the initials M.A. opened a mailbox account for "EZ Building Supply" on or about January 15, 2019. An IP address associated with a location that ASIF ALI has been surveilled entering and leaving on multiple occasions has been used to open and access credit card accounts in M.A.'s name. ASIF ALI also has been surveilled accessing bank accounts in M.A.'s name at bank branches in New Jersey.

    c.    **"Jay Jewelers Inc.":** Public records show that an individual with the initials W.Z. registered "Jay Jewelers, Inc." with the State of New Jersey on or about May 24, 2017, using a mailing address associated with a facility operated by Company A that has since closed.

### Drop Addresses

3.    It was a further part of the conspiracy that the following Drop Addresses, among others, were established, maintained, and used by the Co-Conspirators in furtherance of their fraudulent scheme:

    a.    Number 216 at an address on Main Street in Flemington, New Jersey, that is in fact the address of a commercial mail receiving facility operated by Company B (the "Flemington Drop Address"). Records provided by Company B show that box 216 was rented in or about September 2017 in the name of an individual with the initials A.S., using a purported Pennsylvania drivers license in A.S.'s name as identification, a photocopy of which was maintained on file. A records check revealed that the drivers license number on the drivers license in fact belongs to an individual with the initials N.P. who resides in McMurray, Pennsylvania. The photograph on

5

this purported drivers license matches the photograph of TASSADIQ HUSSAIN that is on file with the New York Department of Motor Vehicles.

b. Numbers 137 and 253 at an address on Mantua Pike in Mantua, New Jersey, that is in fact the address of a commercial mail receiving facility operated by Company B (the "Mantua Drop Addresses").

c. Number 158 at an address on Springdale Road in Cherry Hill, New Jersey, that is in fact the address of a commercial mail receiving facility operated by Company B (the "Cherry Hill Drop Address"). Records provided by Company B show that box 158 was rented using a fraudulent Illinois drivers license bearing the photograph of TASSADIQ HUSSAIN.

d. Number 245 at an address on Maple Avenue in Marlton, New Jersey, that is in fact the address of a commercial mail receiving facility operated by Company B (the "Marlton Drop Address"). Records provided by Company B show that box 245 was rented using a fraudulent Illinois drivers license bearing the photograph of TASSADIQ HUSSAIN.

e. Number 175 at an address on Eagle Rock Avenue in West Orange, New Jersey, that is in fact the address of a commercial mail receiving facility operated by Company B (the "West Orange Drop Address"). Records provided by Company B show that box 175 was rented in the name of an individual with the initials A.A, using a fraudulent Pennsylvania drivers license in A.A.'s name and bearing the photograph of TASSADIQ HUSSAIN.

### Fraud Cards

4. It was a further part of the conspiracy that the Fraud Cards that were opened and used fraudulently by the Co-Conspirators included, but are not limited to, the Fraud Cards summarized below.

**A.S. Fraudulent Identity**

5. As set forth above in Paragraph 3(a), the Co-Conspirators used the identity of A.S. to rent the Flemington Drop Address in or about September 2017, using a fraudulent Pennsylvania drivers license bearing the drivers license number of identity theft victim N.P. and the photograph of TASSADIQ HUSSAIN.

6. The Co-Conspirators then opened at least two Fraud Cards with Bank 2 using the fraudulent A.S. identity. The social security number provided by the Co-Conspirators in connection with the applications for these accounts is in fact the social security number of a minor with the initials T.A.A., with a date of birth in 2005, and the mailing address provided was the Flemington Drop Address. The A.S. Fraud Cards were subsequently used to make charges at the Route 22 Service Corp. Sham Company.

7. Between in or about December 2017 and in or about December 2018, the Route 22 Service Corp. account at Bank 1 received approximately $253,783 in total deposits from credit card transactions, including those conducted using the A.S. Fraud Cards. During that same period of time, the majority of the account's funds were withdrawn in cash in small dollar transactions at bank branches in the areas of Linden, Woodbridge, and Elizabeth, New Jersey. ASIF ALI conducted several of these transactions, including withdrawals made on or about October 3, October 5, and October 19, 2018.

8. On or about July 12, 2018, TASSADIQ HUSSAIN made a payment at a bank branch in Brooklyn, New York, on one of the A.S. Fraud Cards.

**R.A. Fraudulent Identity**

9. On or about December 28, 2018, SHAHID AKHTAR used a credit card issued by Bank 3 in the name of an individual with the initials R.A. to make a purchase in the amount of $351.81 at a home goods and clothing store in Linden, New Jersey. R.A. is a real person who appears to be the victim of identity theft; he or she is a minor, with a date of birth in 2009. His or her date of birth was altered in applying for the Bank 3 account to make it appear to be that of an adult, and the mailing address provided is in fact an address for a commercial mail receiving facility operated by Company B in Mahwah, New Jersey.

10. The R.A. Fraud Card also was used on or about January 25, 2019, to make a $700 charge at the EZ Building Supply Sham Company. On or about May 1, 2019, ASIF ALI accessed a bank account for EZ Building Supply at a branch of Bank of America in Carteret, New Jersey.

### A.A. Fraudulent Identity

11. As set forth above in Paragraph 3(e), the Co-Conspirators used the identity of A.A. to rent the West Orange Drop Address, using a fraudulent Pennsylvania drivers license bearing a photograph of TASSADIQ HUSSAIN.

12. On or about July 18, 2018, the Co-Conspirators used an IP address associated with an apartment complex in Linden, New Jersey, in which SHAHID AKHTAR resides, to open an account at Bank 3 in using the A.A. fraudulent identity. The social security number provided to Bank 3 in connection with this account in fact belongs to a minor with the initials H.S. and a date of birth in 2008. The mailing address provided was the West Orange Drop Address.

13. On or about December 13, 2018, TASSADIQ HUSSAIN visited the Bank 3 branch in Roselle, New Jersey, and withdrew $760 from the account in the name of A.A. Between on or about December 13, 2018, and on or about January 9, 2019, Postal Inspectors observed TASSADIQ HUSSAIN making nine additional withdrawals from this account at various locations in New Jersey and Brooklyn, New York.

14. On or about September 26, 2018, the Co-Conspirators used the IP address associated with the Linden Apartment complex to apply for a Bank 3 credit card account in the name of A.A., using the West Orange Drop Address as a mailing address and the social security number of H.S.

15. On or about December 19, 2018, SHAHID AKHTAR used two different credit cards issued by Bank 2 in the name of A.A., one with an account number ending 1908 and the other ending 7554, at a Target store in Milltown, New Jersey. SHAHID AKHTAR also used the card ending 7554 the next day, on or about December 20, 2018, at a Target store in Edison, New Jersey.

16. In total, investigators have identified at least four different credit card accounts opened in the name of A.A.: two with Bank 2, one with Bank 3, and one with Bank 4. The Bank 4 card was used to make the following

charges at the Jay Jewelers, Inc. Sham Company: a charge of $1,800 on or about November 8, 2018; a charge of $2,300 on or about November 12, 2018; and a charge of $3,500 on or about November 19, 2018.

**Mushtaq Fraud Cards**

17. On or about May 15, 2018, and again on or about July 11, 2018, MOHAMMAD MUSHTAQ made payments on a credit card account issued by Bank 1 in the name of an individual with the initials M.K. The social security number and date of birth given for M.K. appear to be authentic. This card was subsequently used on or about July 25, 2018, to make a $1,250 charge at the Route 22 Service Corp. Sham Company.

18. Records provided by Bank 5 show the existence of three credit card accounts issued in the name of an individual with the initials F.M., who is MOHAMMAD MUSHTAQ's spouse. The date of birth provided for F.M. in connection with these accounts was altered by nine years and, according to a records check with the Social Security Administration, the social security number provided for F.M. is fictitious. Two of the three credit card accounts have been used to make charges at the Route 22 Service Corp. Sham Company.

19. On or about November 14, 2018, ASIF ALI deposited a $2,000 check drawn on an account held in the name of a synthetic identity into an account at Bank 5 held in the name of an individual with the initials M.M. On or about November 18, 19, and 29, 2018, MOHAMMAD MUSHTAQ withdrew funds from the M.M. account.

**Total Losses From the Scheme Calculated to Date**

20. In total, the losses calculated to date from the Co-Conspirators' scheme exceed $2.5 million.